I may please the court, Mike Bresnahan representing Danny Cotton, the defendant and petitioner in this case. I would like to make a few comments before I jump into the exhaustion issue, just some comments about the case generally. The condition it was in when I got it and some impressions I've formed that I think are relevant to today's proceeding. And then I'll get right into the exhaustion thing, because that might be dispositive, at least for now, as to what's going to happen with this case. I believe Mr. Cotton brought or tried to bring, and I think underneath the surface did bring, a legitimate ineffective assistance of counsel claim in this case. But he was unable to articulate that claim. And I believe he brought that coupled with what I would describe as a schlup level gateway actual innocence claim. And had he couched his claim properly, I think that he would be in a much different situation today than he is, having to overcome the district court's characterization of his claim as a stand-alone actual innocence claim. What I would like the Court to consider, and I'll offer this as a backdrop, and normally this would come at the end of my talk. But I would like the Court to consider remanding this case for appointment of counsel and grant counsel leave to reframe the habeas claims that were brought in a sense but not articulated very well. As an ineffective assistance of counsel claim, I don't know that there's necessarily a due process claim connected with the newly discovered evidence allegations. I would want to look at that some more. There might not be. But at least there is a strong ineffective assistance of counsel claim that has been exhausted in the State court. And I think he has a strong, at least schlup level gateway actual innocence claim, if not a Karriger level claim. And as I say, those were exhausted. Those are cognizable in the IAC claim, at least as cognizable in habeas proceedings. If Cotton must exhaust any actual innocence claim he has under Arizona rule of criminal procedure 32.1h, and I'll get to that in just a moment, then I would ask this Court to stay the Federal proceedings while he does that, with leave to amend the habeas claim with assistance of counsel, as I've described, if he gets no relief from the State court. With that in mind, let me address the exhaustion issue. To the extent that Cotton's habeas claims are truly, there were two claims, truly viewed both as maybe a combined standing alone actual innocence claim, they might be unexhausted at this point in time under Arizona's rule of criminal procedure 32.1h, which allows, which was added in 2000, to specifically allow an actual innocence claim to be brought in a collateral proceeding in Arizona. To the law, the case law says to fulfill the exhaustion requirement, the State prisoner or petitioner must present this to the State court, the substantial equivalent of claim presented in Federal court. That's Lopez v. Schreiro. Here, none of Cotton's prior PCR claims, State PCR claims, cited to rule 32.1h concededly, and none really was couched in terms of an actual innocence claim. They were either ineffective assistance of counsel claims or newly discovered evidence claims that he felt warranted an evidentiary hearing and ultimately a new trial, even though they sort of provide the underpinnings of a stand-alone actual innocence claim. So what is it that you would like us to do on the exhaustion question? You want us to send this back to Arizona so that he can have the opportunity to exhaust in Arizona courts? Well, possibly. And let me answer the question by finishing my thought on this. To the extent that Cotton's habeas claim in reality is rooted in an ineffective assistance of counsel claim, those claims were exhausted in State court and are now cognizable. And in a sense, I guess the district court judge ruled on that claim. To the extent, I think the way he put it was to the extent that the claims that he's brought are not exhausted, he found the State court's conclusions regarding the ineffective assistance of counsel issues not objectively unreasonable. But it seems to me that he ought to be able to – it ought to be possible for the court to set aside the actual – this question about whether – Counsel, let me just – let me just get a clarification. On the ineffective assistance of counsel claim, this is – the counsel is ineffective in failing to secure the recantations from these witnesses at an appropriate time. Is that the heart of the claim? Well, that – and this would be, for the most part, in the first Rule 32 petition. There were – there were eight – eight different counts brought, and a lot – eight different things alleged, failure to produce the multiple alibi witnesses, failure to request what's called a Deserault hearing. That's a case in Arizona. Or a Deserault hearing. But encompassed within those ineffective assistance of counsel claims is the claim that he failed to secure the recantations of various witnesses. Included within, yes. Okay. Yeah. And to the extent that a court were to try to evaluate that portion of the ineffective assistance of counsel claim, doesn't that really have to get to the question as to whether he's actually innocent? Isn't – isn't that question somehow critical to resolving whether we've had ineffective assistance of counsel? We – we can't just get to a question as to whether counsel maybe was ineffective by – by failing to solicit recantations unless we're confident that we were going to get recantations and that they were accurate. True. True. I would agree. In – in what I was – what I was going to finish with in terms of the – these exhaustion argument or question, I suppose it would be possible to allow Mr. Cottens to opt out of going forward with a stand-alone, in the Federal case now, a stand-alone actual innocence claim, and just proceed with a more developed or better developed ineffective assistance of counsel claim, along with a – a schlup-like gateway actual innocence claim, to try to help him get around the AEDPA statute of limitations, and not go back to the State court and exhaust a stand-alone actual innocence claim. I think that's an option here. In other words, I think that's an option. How do you want us to rule? What do you want – if you wrote the opinion, what would you say in the opinion? Well, just – just what I said. Well – How would we – what's the holding of the opinion? What I would want the Court to do is, first of all, remand for appointment of counsel. Let counsel develop this claim the way it should have been developed originally. And I'm talking about the IAC claim coupled with the schlup-level actual innocence claim. I would want at least that much done. And – and if and only if the Court felt we first had to go back to the State court and exhaust an actual innocence claim, a stand-alone claim. If and only if the Court felt that way, then I would want the Court to stay the Federal proceedings, allow the – the – Mr. Cotton to exhaust that claim, even though it's really different from the AIC claim. I don't think he would need – absolutely need to do that. And – and once he's done there, if he doesn't get relief, then he comes back to the Federal court with an attorney who's now developed this claim as it should have been developed. Why don't we – what's wrong with this Court holding that the stand-alone innocence claim is unexhausted, as far as I can see, it's unexhausted, it has to go back, and then holding that there's been no colorable showing that there is such a claim. I mean, you've got a lot of affidavits here. We've all seen these in criminal cases after the fact. They – they recant. But – but the affidavits themselves are in – at odds with one another and – and are contradictory in their own terms with each other. And they're good evidence in a trial to prove – to try and prove your side of the argument, but they're a long way from showing clearly that no reasonable jury could – could have voted – would probably vote for – for not guilty. The character standard. Yeah. Right. So why – why aren't we within our rights to say, look, you have not made a colorable claim. You've – you've made a claim here, but it's a – it's an evidentiary thing that you could have done if – if it were tried again. But it's not – it's not a colorable claim. And dismiss the freestanding claim. And just rule on the balance of your – of whatever is before us as affirming or denying what happened in the district court. Well, he didn't – he did not receive a – an evidentiary hearing at the district court level. He may have been able to – Well, go first for the stand-alone claim. Right. He may have made a colorable claim. If we find it's unexhausted, I'm speaking for myself, I don't see it's exhausted. And ordinarily, of course, we would ship it back. But why should we bother another court with this when you've not showed us that there's a colorable claim here as far as – why wouldn't we, within our rights to say there's no colorable claim here? You showed that some people would testify the other way, but there's nothing close to showing that no jury – juror would probably vote for a – a guilty verdict here. Well, I would argue that, at the very least, there's a schlup-level claim. I would – I would stand on that. And I would say that I went into some detail in my brief detailing all of the – the changing of evidence that's taken place since the trial, including all four of the eyewitnesses recanting, one of which – one of whom recanted before trial and hasn't since recanted after testifying against my client. But he hasn't been approached by anybody as far as I know. So because there hasn't been an opportunity to do that, who knows whether he would recant at this point. But three of them have recanted. There is – there is – there is no physical evidence connecting my client to the – to the shooting. There are – The eyewitness – there's – there's plenty of evidence that a jury could convict him. There's evidence that they wouldn't convict him. Well – But there's evidence there that a jury – a reasonable jury could convict him. Well, there are now 10 alibi witnesses, eight of whom are not connected familiarly with – with the client. They're not family members, as far as we know, not close friends, would place him at a party at the very same times the shooting took place. There were only two at trial, and both, I think, were related to him and very impeachable. That's a big change. Again, neither at trial or now was there any physical evidence connecting him with the offense. His brother physically looks like him, has the same kind of car that was seen at the scene of the crime. His brother is either right- or left-handed, and he's either left- or right-handed. It's different. And the shooter was seen to be shooting with the hand that is non-dominant for my client and dominant for his brother. There's just – there's an awful lot of evidence that suggests that for whatever reason, there was a misidentification in this – in this case. And none of – if we went back to trial, there would be maybe one, but possibly no witnesses who would appear and say, yes, that's the guy sitting at the defense table who did it. I think that's pretty powerful. Clearly, no jury would convict on – on that kind of evidence. Remind me who the witness was that recanted the trial? Well, before trial, it was one of the two juvenile victims. Okay. And I don't remember what – It was not – it was not his cousin. That's Mel – is that Mel Wright? Is that who that was? That's right. Yes, Mel was his cousin. So Mel – Mel did not – Mel did not recant before trial. And this was his cousin who went before the jury and said, yeah, it was my cousin. My cousin shot him. My cousin handed me the gun and said, told me to shoot him. And I told him, no, I wouldn't. And so he said, okay, he'd do it. And he just did it. And he would be impeachable in a new trial. I'll grant the court that. But it would be – I think a jury would be hard – and there – I guess we would have to flesh out the – what happened there, why he testified. It's pretty tough to come back and say that his cousin, who was his buddy and was with him on that night, mistook him for his brother. Well, again, I wasn't – I haven't been in a position to investigate this, to interview this young man, find out why he said one thing on one occasion and said something else later. But the brothers are not twins, right? They're – No, they're not – they're not twins, but they do – facially, they look similar. One is bigger than the other. And that was another thing. The description of the shooter was somebody who was bigger than Mr. Cotton, kind of like his brother. I don't know about the cousin's recantation, because when I got the case, we were beyond that point. I wasn't – it wasn't my job, so to speak, to interview him. I'm down to 19 seconds, and I haven't even touched the certified issues and so forth. If you would like me to sit down, I will. I think that we have your briefing on all of the issues. Okay. We'll hear from the State's attorney, and we'll grant you a little bit of rebuttal time, depending on what comes up here. Good morning, Your Honors. May it please the Court. I'm Donna Lamb. I represent the State from the Arizona Attorney General's Office. I think it's extraordinary that the defense now wants to amend the petition to add an IAC claim that has never been there in Federal habeas. I don't believe the Court can read this into his Federal habeas claim at this point. We've done all the briefing. We are here at argument. And what he has presented to this Court is a freestanding, noncapital, actual innocence claim. This Court should dismiss this claim for two very compelling reasons. First, under Herrera v. Collins, it's not cognizable in this Court. And, two, it is unexhausted as a freestanding actual innocence claim. And, in fact — Okay. Now, if we have our choice between Herrera and nonexhaustion, why shouldn't we exhaust this and allow Arizona to have a first crack at that? That would seem to be what Adeepa would require us to do, right, is not to step in and decide this question in the place of the Arizona courts. Is the Court suggesting a stay and a remand at this point? I'm suggesting if it hasn't been exhausted, then that we should give him an opportunity to exhaust it in Arizona, and that is both appropriate for the defendant, but also a sign of our deference to the Arizona courts. That's correct, Your Honor. And he does have the opportunity to go back under Rule 32.1H at any time. If we have — if it is unexhausted, and if that is the State's position that it is unexhausted, I don't see that under the statute we have the option to decide the Herrera question. That is true, Your Honor. Under either Herrera or exhaustion, he loses. Well, I understand that, but if it hasn't been — I mean, the Court would have to choose. Yes, would have to choose. If it hasn't been exhausted, I'm not sure we really have the option to decide Herrera. It is unexhausted. So the Court should not — I mean, truly, if the Court agrees with the State, it's unexhausted. So what would the State like us to do? The State would like the Court to find it unexhausted and dismiss it. And that would give him the opportunity to go back to Arizona courts and see whether it's unexhausted. Absolutely. He would certainly have that opportunity. There is no preclusion involved in a Rule 32.1H. And if it's not — if the Arizona courts hold that he is barred, does the State have a position as to whether he is — as to whether he would be permitted to exhaust this in Arizona courts? The State's position is that his claim is incredible. But that's speculative. That's up to the Arizona courts to determine whether or not he brings a credible claim in the 32.1H. Right. That wasn't — that wasn't my question. I'm sorry. Does the State have a position as to whether, if he went back to the Arizona courts, whether they would hear his claim at this point? You seem to have argued this both ways. There seems to be something you told the district court one thing, you told us a different something different. I would have to speculate whether the Court would — I'm assuming the Court would say yes, would let him bring his claim. And, in fact, he complained that he could not bring in his newly-discovered evidence issue all of the evidence that he wanted to present to the State court. If he goes back under the actual innocence provision under Rule 32.1, he can accumulate all that evidence. And, yes, I can't — I can't imagine why the Court would not hear that claim if it were credibly presented. Okay. They're not going to tell him that the claim is barred? No. It isn't barred. Under 32.1H, it's not precluded. It would be if he tried to go back and do another newly-discovered and not present something. And he's pretty much covered those bases. Well, if it's unexhausted, we don't have to remand it back if it's — if they don't If no colorable claim is made before us, do we? No. Well, if your position is that this claim is incredible, you must — I assume you think that in the court of appeals here, he has not made a colorable claim. The State does not believe that. And under House v. Bell and Carragher and Schlapp, to make a credible claim, defendant either exculpatory scientific evidence, credible, trustworthy eyewitnesses, or some kind of physical evidence. Well, if that is your position, if that's the Attorney General's position, why do you want us to remand it back to the State when your position is he's made no colorable claim in the court of appeals sufficient for us to remand it back to dismiss it without prejudice, I should say, to his further proceedings before the State? Why — why is it your position that if he's made no colorable claim here, he's made a claim that some of the evidence would be different, but he hasn't made a claim that's colorable under the law that he's espousing, why is it your position that we just dismiss it with prejudice? The State would prefer it that the Court dismiss it with prejudice.  I'm sorry. I mean, certainly before the Court extends relief on this claim, remand would be preferable. But by all rights, the Court should dismiss this case with prejudice, either on Herrera or the exhaustion. And speaking of the credibility, I believe that defense counsel said that the district court ruled on his IAC claim. The State disagrees with that. The district court granted the deference as due under the ADPA to the trial court's finding that the evidence wasn't credible and didn't actually — didn't rule on an IAC claim that's not there in the Federal habeas petition. So still the State would say if you're — if a court is not inclined to find that this issue is unexhausted, then we would ask you to look at it under the Herrera v. Collins holding of the United States Supreme Court, primarily because there really is no freestanding IAC claim available. Herrera reserved that issue for a possible and persuasive capital case where it would be unconstitutional to execute a defendant who made that claim. So to get relief, this defendant would have to show under the ADPA that the trial court's finding was an unreasonable — either was contrary to or an unreasonable application of prevailing United States Supreme Court law. Circuit law, certainly under Kerrigan, is persuasive, but it's not sufficient to grant relief on a freestanding actual innocence claim. The other thing that's sort of confusing about all this is Herrera is a substantive freestanding actual innocence claim, whereas Schlupp, which the defendant would like to resort to, is a much lower standard, but it's not constitutional defect in his Federal habeas claim. It — there was no IAC claim presented, and this Court cannot read that claim into it simply because it would give him the option of some kind of relief under Schlupp, in which case all he would have to show is that no reasonable juror would probably find him guilty beyond a reasonable doubt. And the standard in Herrera, of course, is extraordinarily high. Even though the Supreme Court has not said exactly what it is, certainly Justice Blackman in his dissent said it would be an extraordinary standard to meet. And the State posits that the Petitioner couldn't even meet the Schlupp standard, much less the extraordinarily high standard. And that's what he's brought here, is a freestanding, noncapital actual innocence claim. And also, I'd like to address Kerrigan's claim that the Supreme Court has to be a little bit more rigor a bit, because I know the Court was interested in how this case measured up to Kerrigan. In one sense, certainly it's a pre-AEDPA case, which means that the Court was not required to give the State court's finding the deference that the AEDPA does require, and would require also that he rebut that any — any factual findings with clear and convincing evidence. And the State posits that the Petitioner has not managed to do that as well. More or less, in — also in Kerrigan, the — one of the State's witnesses actually confessed to the murder. That's much stronger evidence than having a series of recantations, especially when one of them is weighted 10 years after the trial. That would be the Deborah Williams recantation. And all she says, basically, is, well, I looked at some pictures. I was wrong. Whereas in court, Ms. Williams identified the Petitioner, identified a tattoo he had on his neck, which was displayed in court, Dan Dan. That's pretty specific. And none of the other recantations blamed this poor brother, who's now getting — trying to get blamed for the aggravation of the aggravated assault. The brother had absolutely no connection to any of these witnesses. He was older. He was working, by all accounts, not having any difficulty with the law. So Kerrigan was — was very different because you have the — you have the admission, you have evidence that could have gone either way. The Court could have interpreted the recantation and the recantation of the recantation to be different to either agree or disagree with the findings — with the finding guilty. So in this case, we don't have — we don't have a kind of reliable evidence. Recantations are notoriously unreliable, as been found by this Court, the United States Supreme Court, without more, especially in this case, because there was a finding by the State court that there was evidence in the record that pre-trial — in fact, we know, pre-trial, there were two recantations by Ricky Montague, who was one of the victims, and also Curtis Norris, who was one of the victims, before trial. And evidence was discussed in court between the defense attorney in the trial court and the prosecutor that these recantations were obtained through coercion by — not personally by Petitioner, but by family members and associates. And so it — it places a cloud on later recantations. They're already suspect. And for the Court to rely on that certainly does not seem to be very — very credible evidence. Just — excuse me one second. And, in fact, all of the cases that Petitioners relied on are of the Schlupp standard, the Carriger and Osborne. And as the State said, even under the Schlupp standard, this kind of evidence is not going to save the day for the Petitioner. Does the Court have any further questions? I don't believe that any of us have any further questions. Thank you, Ms. Lam. We used your time with a lot of questions, so you can have a couple of more minutes for rebuttal. Thank you. I'll be brief. Very quickly, the recantation that was supposedly coerced, to comment on that, there was — in the record, there is evidence that there was a subsequent affidavit filed by a young lady who said she was the one who obtained those recantations. This was after trial. And she was actually friends with the juveniles that recanted and had gotten these recantations from them. And there was no — in other words, there was no coercion involved. And to that point, the allegation that some of these recantations are not particularly reliable, I would say that's one of the reasons we need an evidentiary hearing and should have gotten an evidentiary hearing at the district court level, because if these allegations on their face were true, or are true, then they would be compelling evidence of innocence under the circumstances. And really, you have to bring these witnesses in and put them under oath and question them. Now, as to the exhaustion issue and what should happen from here, I think that the state actual innocence claim under Rule 32 can actually be decoupled from the federal claim. And the defendant can be allowed to opt either in or out of the state claim. And I say that because the ineffective assistance of counsel claim can be found in the petitioner's habeas claim. If you look to — it isn't articulated very well in the — on the face of the petition, but if you look in the Traverse and Reply, as he describes it, this is E.R. Volume 2, pages 45 through 54, his pleading is replete with references to ineffective assistance of counsel. And the district court did pick up on that. And in its order, it did address that issue and, again, said something to the effect, to the extent that the issues are not — or were exhausted, this is how I view this ineffective assistance of counsel issue. And so he did actually speak to that. He didn't recognize it. What I'm asking the Court to do is allow this matter to be remanded, allow an attorney to properly couch the issues, the ineffective assistance of counsel issue coupled with the slump actual innocence claim, allow that to go forward in the Federal court, and allow him to opt either in or out of any remedy he might have in the State court, a separate remedy, and just allow both of those things to go in their — their directions, whatever direction, different directions perhaps. And I think he's entitled to do that, because, again, I think he's — he's allowed to choose his habeas issues. And I think he has chosen ineffective assistance of counsel, however poorly he's articulated that.  Thank you, counsel. We appreciate the arguments of both counsel. The case is submitted, and we will stand adjourned.
judges: Cowen, Graber, Bybee